USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/26/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOVENSA LLC,

Plaintiff,

- against -

KRISTENSONS-PETROLEUM, INC.,

Defendant/Third-Party Plaintiff,

- against

OIL OVERSEAS S.A.,

Third-Party Defendant.

**OPINION AND ORDER**

**12 Civ. 5706 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION[1]

[1] Subject matter jurisdiction over this action for the enforcement of a maritime contract exists under 28 U.S.C. § 1333. *See* Complaint ("Compl.") ¶ 1 (alleging subject matter jurisdiction on the bases of admiralty and diversity, and designating the action as an admiralty case under Federal Rule of Civil Procedure ("Rule") 9(h)). Jurisdiction is also alleged on the basis of diversity, but it appears that the parties are not completely diverse. One of the members of Hovensa is Hess Corporation, *see* Rule 7.1 Statement of Hovensa, which is a Delaware corporation according to Delaware's Secretary of State. KPI is likewise a Delaware corporation, *see* Third-Party Complaint Against Third-Party Defendant OOSA ("Third-Party Compl.") ¶ 2, defeating diversity under the rule of *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990).

On May 16, 2012, Hovensa LLC ("Hovensa") brought suit against Kristensons-Petroleum, Inc. ("KPI") in the United States District Court, District of New Jersey, seeking $242,121 in payment for 2,294 barrels of marine fuel oil (commonly referred to as "bunkers") that Hovensa had delivered to the M/T Commencement (the "Vessel") on KPI's account.[2] By stipulation of the parties, the action was transferred to this Court under 28 § U.SC 1404(a) on July 24, 2012. The purpose of the transfer was to "facilitate the impleader of a third party defendant who may not be subject to *in personam* jurisdiction" in the District of New Jersey.[3]

On August 9, 2012, KPI filed a Third-Party Complaint alleging that it had ordered the fuel oil from Hovensa to fulfill a contract with Oil Overseas, S.A. ("OOSA"), and seeking $243,851.04 from OOSA for non-payment of that contract.[4] A summons issued on August 10, 2012, and OOSA was served with it by a Federal Express package mailed under Rule 4(f)(2)(C)(ii) on August 12.[5] OOSA acknowledged receipt on October 12, and entered an appearance on January

---

[2] *See id*. ¶¶ 6-12.

[3] 7/20/12 Letter from Hovensa, Doc. No. 5.

[4] *See* Third-Party Compl. ¶ 13. The Third-Party Complaint is designated as one arising in admiralty within the meaning of Rule 9(h). *See id*. ¶ 6.

[5] *See* 10/12/12 Clerk Certificate of Mailing, Doc. No. 11.

4, 2013 for the purpose of contesting the Court's jurisdiction.[6]

Presently before the Court is OOSA's motion to dismiss the Third-Party Complaint under Rule 12(b)(2) for lack of personal jurisdiction, or alternatively under Rule 12(b)(7) for failure to join an indispensable party.[7] For the reasons stated below, KPI's motion to dismiss for lack of personal jurisdiction is granted.

## II. BACKGROUND

### A. Factual Background

#### 1. Parties and Relevant Entities

Hovensa is a U.S. Virgin Islands limited liability company that operates a marine terminal in St. Croix.[8] KPI, a Delaware corporation with its principal place of business in New Jersey, is a trader of marine fuel oil.[9] KPI regularly purchases bunkers of oil from Hovensa under the terms of a standard

---

6 *See* 1/4/13 Notice of Appearance, Doc. No. 13. Subsequently, OOSA was served under the Hague Convention. *See* 12/27/12 Certificate of Service (accepted by Jianna Sarian, employee of OOSA), Doc. No. 20.

7 *See* Memorandum of Law in Support of Motion to Dismiss the Third-Party Complaint Against Oil Overseas S.A. ("Def. Mem.") at 1.

8 *See* Compl. ¶¶ 2, 8.

9 *See* Third-Party Compl. ¶ 2.

form contract.[10] OOSA, a Panamanian corporation headquartered in Greece, is also a trader of marine fuel oil.[11] The Vessel is a foreign-flagged ocean-going tanker, which is not registered in the United States.[12] Annamar Navigation, Inc. ("Annamar"), the owner of the Vessel and Chemnav Shipmanagement, LLC ("Chemnav"), the Vessel's operator, are not parties to this litigation.[13]

### 2. The Transactions at Issue

This case arises out of a chain of agreements aimed at provisioning the Vessel with oil. The facts below are not in dispute. On November 25, 2011, Chemnav engaged OOSA to supply the Vessel with approximately 2,300 barrels of marine fuel oil at a price of $107.25 per barrel, to be delivered to the Vessel, F.O.B., at Hovensa's St. Croix terminal.[14] OOSA then ordered the oil requested by Chemnav from KPI at a price of $105.75 per barrel.[15] KPI, in turn, ordered the oil

---

[10] *See* Compl. ¶ 6.

[11] *See* Third-Party Compl. ¶ 3.

[12] *See* Def. Mem. at 2 (citation omitted).

[13] *See id*. at 2-3 (citations omitted).

[14] *See* Memorandum of Law in Opposition to OOSA's Motion to Dismiss the Third-Party Complaint ("Opp. Mem.") at 2 (citation omitted).

[15] *See* Compl. ¶ 7.

from Hovensa at a price of $105.00 per barrel.[16] Finally, on November 27, Hovensa delivered the requested barrels of oil to the Vessel, which promptly acknowledged receipt.[17]

Once this delivery had been made, Hovensa sent KPI an invoice for $242,121.60,[18] KPI sent OOSA an invoice for $243,851.04,[19] and OOSA sent Chemnav an invoice for $248,462.88,[20] all payable within thirty days of delivery. To date, OOSA has not paid KPI,[21] and KPI has not paid Hovensa.[22] The facts alleged do not indicate whether Chemnav paid OOSA.

**B. Jurisdictional Facts**

In the Third-Party Complaint, KPI alleges the following in support of finding personal jurisdiction over OOSA:

> Venue is proper because Third-Party Defendant [OOSA] contractually agreed that it would submit to the jurisdiction of any court of competent jurisdiction within the United States, and/or to the jurisdiction of the

---

16 *See id*.

17 *See id*. ¶¶ 8-9.

18 *See id*. ¶ 10.

19 *See* Third-Party Compl. ¶ 12.

20 *See* Opp. Mem. at 2 (citation omitted).

21 *See* Third-Party Compl. ¶ 12.

22 *See* Compl. ¶ 11.

District Court for the Southern District of New York, and/or pursuant to 28 U.S.C. § 1391(a)(3) since [OOSA] is subject to personal jurisdiction herein and/or because the initial complaint is venued herein and this is a related action.[23]

In support of its motion to dismiss for lack of personal jurisdiction, OOSA presents an affidavit averring that it is foreign corporation that has no contacts with New York, and that the facts underlying KPI's claim against it have no connection to New York.[24] KPI does not contest these facts,[25] but nevertheless asserts that three contractual provisions to which OOSA is a party show that it is subject to personal jurisdiction in New York.

*First*, KPI points to Article 12(c) of KPI's "Standard Terms and Conditions of Sale of Marine Fuel" (the "KPI Terms"), which was incorporated in the purchase confirmation that KPI sent to OOSA when OOSA purchased fuel from it.[26] The KPI Terms state that:

> All other disputes between [OOSA] and [KPI] not arising out of or relating to the quantity or quality of fuel delivered to or to be delivered hereunder shall be resolved in an action brought in the United States District Court for the Southern District of New

---

[23] Third-Party Compl. ¶ 7.

[24] *See* 1/4/13 Declaration of Michael Sabethai (Director of OOSA) in Support of Motion to Quash Service and Dismiss Third-Party Complaint Against OOSA ("Sabethai Decl.") ¶¶ 4-7.

[25] *See* Opp. Mem. at 1-6.

[26] *See id*. at 2-3.

> York. However, if [OOSA], its agents, servants or assigns, the receiving vessel, her owners, charterers, or any other entity liable to [KPI] under this contract, or at law, are not available in the jurisdiction of New York for service of process, then [KPI] is free to bring suit against any or all of them in any jurisdiction where any or all of them may be found for purposes of service of process.[27]

*Second*, KPI argues that Article 12(a)-(b) of the KPI Terms also evidences OOSA's consent to jurisdiction in New York.[28] These clauses state that "[a]ny and all differences or disputes arising out of or related to the quantity or quality of fuel delivered or to be delivered hereunder" are to be submitted to arbitration in New York City.[29]

Finally, KPI argues that it is not unreasonable to exercise jurisdiction over OOSA in light of OOSA's own "General Terms and Conditions for Sale and Delivery" (the "OOSA Terms"), which were incorporated by reference in OOSA's confirmation of Chemnav's order for fuel.[30] The OOSA Terms state in pertinent part that:

---

[27] KPI Terms, Ex. 5 to Declaration of Jeanne-Marie van Hemmen, counsel to KPI, in Opposition to OOSA's Motion to Dismiss the Third-Party Complaint ("Hemmen Decl.").

[28] *See* Opp. Mem. at 5.

[29] KPI Terms.

[30] *See* Opp. Mem. at 6.

> Any contract between the Buyer [*i.e.*, Chemnav] and OOSA shall be construed and take effect in accordance with the United States of America law (Federal Maritime Act - US Code sct 971-975) and the parties thereto shall submit to the jurisdiction of the United States of America Federal court, unless it is specifically agreed otherwise.[31]

## III. APPLICABLE LAW

### A. Admiralty Jurisdiction

Article III of the United States Constitution extends the judicial power "to all Cases of admiralty and maritime Jurisdiction[,]"[32] and Section 1333 of Title 28 of the United States Code provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: . . . [a]ny civil case of admiralty or maritime jurisdiction. . . ." A bunker supply contract is squarely within the scope of admiralty jurisdiction, even when one party purchases the fuel from a third party and the third party delivers the fuel to the vessel.[33]

### B. Choice of Law

"A federal court sitting in admiralty must apply federal choice of law

---

31 OOSA Terms and Conditions, Ex. 7 to Hemmen Decl.

32 U.S. Const. Art. III § 2.

33 *See Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612-13 (1991). *Cf. Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 65 (2d Cir. 2012) ("The case does, after all, involve two maritime transportation companies arguing over a fuel contract—at first glance, a quintessential admiralty action.").

rules."[34] The "touchstone" of this analysis "is a concern for the uniform meaning of maritime contracts. . . ."[35] Thus, a choice of law provision in a maritime contract does not "govern[] the contracts such that [it] cannot be analyzed under maritime law."[36] Instead, "the first step of the analysis is determining whether something is a maritime contract; then, once a contract has been deemed a maritime contract, the next step is determining whether a specific state's laws should be used to supplement any area of contract law for which federal common law does not provide."[37]

**C. Personal Jurisdiction**

"In federal admiralty practice, personal jurisdiction and venue analyses merge so that venue is proper in any district in which valid service of process may be had on the defendant."[38] "'[T]he law of the forum state — here,

---

34 *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir. 1990).

35 *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004).

36 *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008).

37 *Id*. (citing *Norfolk S. Ry. Co.*, 543 U.S. at 27).

38 *Ziegler v. Rieff*, 637 F. Supp. 675, 677-78 (S.D.N.Y. 1986) (citations omitted). *Cf*. Rule 82 ("An admiralty or maritime claim under Rule 9(h) is not a civil action for purposes of 28 U.S.C. §§ 1391-1392.").

New York — governs the issue of personal jurisdiction in admiralty cases.'"[39]

Under New York law, when the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need only show a prima facie case."[40] Plaintiffs "can make this showing through [their] own affidavits and supporting materials containing an averment of the facts that, if credited . . . would suffice to establish jurisdiction over the defendant."[41] Thus, a court may consider materials outside the pleadings,[42] but must credit plaintiffs' averments of jurisdictional facts as true.[43]

"[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a

---

39 *Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, No. 12 Civ. 3597, 2013 WL 1129998, at *1 (S.D.N.Y. Mar. 19, 2013) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 (2d Cir. 1991)).

40 *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

41 *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

42 *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

43 *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*, 84 F.3d 560, 567 (2d Cir. 1996).

controverting presentation by the moving party."[44] Nonetheless, where a defendant "rebuts [plaintiffs'] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted."[45]

Sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR") govern the exercise of personal jurisdiction in New York. Section 301, the general jurisdiction statute, states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Section 302 provides circumstances in which a non-domiciliary may be subject to specific jurisdiction for claims that arise out of facts related to its contacts with New York. If the court concludes that jurisdiction exists under the CPLR, it must then consider whether such jurisdiction is consistent with the requirements of the due process clause of the Fourteenth Amendment, *i.e.* minimum contacts and traditional notions of fair play and substantial justice.[46]

Alternatively, "[p]arties can consent to personal jurisdiction through

---

44 *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

45 *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

46 *See MEE Direct, LLC v. Tran Source Logistics, Inc.*, No. 12 Civ. 6916, 2012 WL 6700067, at *4 (S.D.N.Y. Dec. 26, 2012) (citations omitted).

forum-selection clauses in contractual agreements."[47] The Supreme Court has held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[48] Courts in this Circuit "apply general contract law principles and federal precedent to discern the meaning and scope of [] forum [selection] clause[s]."[49] In this undertaking, "[t]he court must 'examine the substance of [a plaintiff's] claims as they relate to the precise language' of the specific clause at issue."[50] "To the extent that a forum selection clause is vague or ambiguous, it will be construed against the party who drafted it."[51]

## IV. DISCUSSION

### A. This Court Lacks Jurisdiction Over OOSA

KPI's argument that OOSA contractually consented to jurisdiction in

---

47 *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

48 *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (quotation marks and citations omitted).

49 *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). *Accord New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997).

50 *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 90 (2d Cir. 2009) (quoting *Phillips*, 493 F.3d at 389).

51 *In re Facebook, Inc., IPO Secs. and Derivative Litig.*, MDL No. 12–2389, 2013 WL 525158, at *10 (S.D.N.Y. Feb. 13, 2013) (citations omitted).

New York is unavailing. The OOSA Terms are plainly inapposite, because KPI is not a party to them, and they relate to disputes between Chemnav and OOSA, not OOSA and KPI. Similarly, Article 12(a)-(b) of the KPI Terms do not support the exercise of jurisdiction here, because these provisions: (1) relate solely to disputes over quantity or quality, which are not at issue;[52] and (2) merely evidence OOSA's "consent to New York jurisdiction for all arbitration-related proceedings[,]"[53] not its consent to jurisdiction in actions unrelated to arbitration proceedings.[54]

The remainder of KPI's jurisdictional argument rests on Article 12(c) of the KPI Terms, quoted above. KPI interprets the first clause of this provision as a consent to jurisdiction in New York by itself and OOSA, and its second clause as a reservation of KPI's right to bring suit in other jurisdictions.[55]

This interpretation is not persuasive. Under both federal common law

---

52 *See In re American Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) ("Parties may limit the issues they choose to arbitrate, and nothing prevents parties to an agreement from excluding claims from the scope of an agreement to arbitrate.") (quotation marks, alterations, and citations omitted).

53 *D.H. Blair & Co., Inc.*, 462 F.3d at 104.

54 *See, e.g., Mariac Shipping Co., LTD. v. Meta Corp.*, No. 05 Civ. 2224, 2005 WL 1278950, at *1 (S.D.N.Y. May 31, 2005) (granting motion to dismiss for lack of personal jurisdiction where jurisdiction over defendant was alleged solely on the basis of agreement to arbitrate).

55 *See* Opp. Mem. at 4-5.

and New York law,[56] "a court must interpret a contract by considering all of its provisions, and 'words and phrases . . . should be given their plain meaning.'"[57] Furthermore, it is hornbook law that "every word, phrase or term of a contract must be given effect. An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable."[58]

KPI's interpretation of the first clause of Article 12(c) renders the second clause "inexplicable": if the first clause represents unconditional consent to personal jurisdiction in New York, it is mysterious why the second clause would turn on the party's availability for service of process, which is closely connected to the exercise of *in personam* jurisdiction under admiralty law.[59] In fact, KPI virtually concedes that the first clause does not evince unconditional consent to jurisdiction in its opposition brief, in which it states that "[the second clause] gives

---

[56] The KPI Terms contain a New York choice of law clause. *See* KPI Terms, Article 11.

[57] *Malmsteen v. Universal Music Group, Inc.*, No. 10 Civ. 3955, 2013 WL 1694402, at *5 (S.D.N.Y. Apr. 19, 2013) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).

[58] 11 Richard A. Lord, *Williston on Contracts* § 32:5 (4th ed. 2012) (citing, *e.g.*, *Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992) (applying New York law)).

[59] *See Ziegler*, 637 F. Supp. at 677-78.

. . . KPI[] the right . . . to bring suit in another forum *if it is necessary to obtain jurisdiction over a party liable to KPI*."[60] If the first clause truly represented the parties' consent to jurisdiction in New York, KPI would never need to sue a party to the KPI Terms in another forum in order to obtain jurisdiction. In short, although the first clause, standing alone, could reasonably be interpreted as evidencing OOSA's consent to jurisdiction,[61] this interpretation makes little sense in light of the second clause.

A better reading of Article 12(c) is that its first clause establishes mandatory venue in the Southern District of New York, but its second clause conditions this venue on the existence of traditional indicia of personal jurisdiction when suit is brought by KPI. (By its terms, the second clause is not applicable to suits brought *against* KPI — presumably, as a corporation with its principal place of business New Jersey, it favored the Southern District of New York as a forum).

A further function of the second clause is to shield OOSA from attachment proceedings under Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims Rule B ("Rule B"). Rule B provides that,

---

[60] Opp. Mem. at 5 (emphasis added).

[61] *See John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc.*, 22 F.3d 51, 52 (2d Cir. 1994) (holding that contractual provision stating that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" was a permissive forum selection clause).

in an *in personam* action, "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the [supporting] affidavit . . . are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property. . . ."[62] A defendant may be "found" in a district when it is "'1) subject to personal jurisdiction within the district and 2) capable of being served with process there.'"[63] In light of these rules, the second clause of Article 12(c) protects OOSA from attachment proceedings under Rule B, by obliging KPI to bring suit only in "jurisdiction[s] where [OOSA] may be found for purposes of service of process."

Thus, KPI struck a bargain whereby it got the benefit of its favored forum when it was sued, and in consideration relinquished its right to obtain jurisdiction over OOSA through Rule B attachment proceedings. It is not prejudicial to hold KPI to this bargain. The KPI Terms establish that KPI has a lien on the Vessel in the amount that it is seeking from OOSA,[64] and take pains to

---

62 Rule B(1)(a).

63 *First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 441 (2d Cir. 2006) (overruled on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009))).

64 *See* KPI Terms Article 4(e) ("Sales shall be made on the credit of the receiving vessel, as well as on the credit of the Buyer, and the amount due on the

reserve KPI's rights to proceed against the vessel in any fashion traditionally countenanced by admiralty law, including under Rule B.[65] Thus, as OOSA points out, KPI has the option of arresting the Vessel in order to obtain jurisdiction over Annamar and Chemnav, or bringing an action in Greece, where both OOSA and Chemnav may be found for jurisdictional purposes.[66]

In sum, the contracts alleged by KPI do not support the exercise by a New York court of personal jurisdiction over OOSA,[67] and KPI has offered no other grounds upon which jurisdiction may rest. Nor has KPI provided the Court with any reason to believe that jurisdictional discovery would be anything other

---

purchase price, together with all delivery and other charges forming part of the agreement of sale, shall become a maritime lien against the vessel immediately upon delivery.").

[65] *See id*. Article 12(d) ("Notwithstanding any of the above, [KPI] shall be entitled to avail itself of any and all remedies under maritime law to obtain jurisdiction and/or security for its claims against the vessel, her owners, its agents, servants, Buyers and/or charterers, including, but not limited to, vessel arrest and attachment procedures under the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims, in any Jurisdiction.").

[66] *See* Def. Mem. at 19.

[67] To the extent that there is some ambiguity in the contract that has not been identified by the parties, such ambiguity would be construed against the drafter, KPI, leading to the same result as discussed above. *See, e.g., McCarthy v. American Intern. Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) ("New York follows the well established *contra proferentem* principle which requires that equivocal contract provisions are generally to be construed against the drafter.") (quotation marks and citations omitted).

than a waste of resources. Therefore, OOSA's motion to dismiss for lack of personal jurisdiction is granted. Because this motion is granted, I do not reach the alternate grounds of failure to join an indispensable party under Rule 12(b)(7).

### B. Venue

The affidavits submitted by the parties reveal that neither KPI, nor Hovensa, nor the facts underlying this case have any connection to New York. The case commenced in New Jersey, where KPI conducts its business operations, and was transferred to this Court solely to facilitate the impleader of OOSA.[68] Now that this purpose has been frustrated, there is no reason for the action to continue in this District. For these reasons, and for the convenience of the parties and witnesses, the case will be transferred back to the District of New Jersey under 28 U.S.C. § 1404.

## VI. CONCLUSION

For the foregoing reasons, OOSA's motion to dismiss for lack of personal jurisdiction is granted, and this action is transferred to the District of New Jersey under 28 U.S.C. § 1404. The Clerk of the Court is directed to close the motion (Doc. No. 14) and transfer the case to the District of New Jersey forthwith.

---

[68] *See* 7/20/12 Letter from Hovensa, Doc. No. 5.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
April 26, 2013

**-Appearances-**

**Counsel for Plaintiff:**

Geoffrey D. Ferrer, Esq.
Christopher Raleigh, Esq.
Cozen O'Connor
45 Broadway
New York, NY 10006
(212) 509-9400

**Counsel for Defendants/Third-Party Plaintiff:**

Jeanne-Marie D. Van Hemmen, Esq.
Josh Greco, Esq.
Josh Parks, Esq.
Betancourt, Van Hemmen, Greco & Kenyon LLC
151 Bodman Place, Suite 200
Red Bank, NJ 07701
(732) 530-4646

**Counsel for Third-Party Defendant:**

Scott R. Johnston, Esq.
John G. Poles, Esq.
Poles Tublin Stratakis & Gonzalez, LLP
46 Trinity Place, Fifth Floor
New York, NY 10006-2288
(212) 943-0110